**Deric COAKLEY,**

v.

**SEARIVER MARITIME, INC.**

No. CIV.A.02–3509.

United States District Court,
E.D. Louisiana.

May 25, 2004.

713

Robert J. Young, Jr., Timothy J. Young, New Orleans, LA, for Deric Coakley, plaintiff.

Thomas James Wagner, Thomas Arnoult Rayer, Jr., Wagner & Bagot, New Orleans, LA, for SeaRiver Maritime, Inc., defendant.

## ORDER AND REASONS

FELDMAN, District Judge.

### I.

Deric Coakley worked as a deckhand for SeaRiver Maritime Inc. During his employment, Coakley was a deckhand on the tug S/R CHICAGO and undisputedly enjoys the status of a seaman with respect to that vessel. At the time of the accident in March 2003, the tug had several barges under tow in the wintry upper Mississippi River. Coakley, under instructions, went to fix the sounder on the front of an unmanned barge, which was under tow and owned by Kirby Inland Marine, Inc. SeaRiver was towing Kirby's barge under a reciprocal towing agreement. Instead of using the cat walk to reach the vessel's tow, Coakley, accompanied by two co-workers, walked along the parameter of the barges. The barges were icy under-

foot. Coakley slipped and fell on an icy patch while departing the barge to the tug after the repair work was completed. Coakley, has asserted claims for Jones Act negligence and breach of the warranty of seaworthiness. On August 8, 2003, the Court denied the defendant's motion for summary judgment on the plaintiff's unseaworthiness claim, allowing the plaintiff to sue the defendant for the unseaworthiness of the Kirby barge that was under tow. After the parties submitted their trial briefs, the Court, convinced its August 8th decision was in error, now recalls and rescinds its previous order and enters partial judgment as a matter of law on the issue of unseaworthiness in favor of the defendant.

### II.

Generally, the Court may rule on an issue as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.P. 50(a). The party opposing the ruling "must at least establish a conflict in substantial evidence on each essential element of their claim." *Anthony v. Chevron U.S.A., Inc.*, 284 F.3d 578, 583 (5th Cir.2002) (citing *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (en banc)). All the evidence presented must be considered by the Court " 'in the light and with all reasonable inferences in favor to the non-moving party.' " *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 705 (5th Cir.1997) (quoting *Boeing*, 411 F.2d at 374). Judgment as a matter of law is proper if " 'the facts and inferences point so strongly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict.' " *Id.* (quoting *Boeing*, 411 F.2d at 374). However, here the evidence is not in dispute. Fact issues need not be resolved. The issue presented is one of law only.

### III.

Seaworthiness applies to the vessel owner's vessel and its appurtenances.[1] *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941 (1960). No seaworthiness duty exists with respect to the S/R CHICAGO's tow. The duty of seaworthiness is an absolute and non-delegable one which "the *owner* of a vessel owes *to the members of the crew who man her.*" *United New York and New Jersey Sandy Hook Pilots Ass'n v. Halecki*, 358 U.S. 613, 616, 79 S.Ct. 517, 519, 3 L.Ed.2d 541 (1959) (Emphasis added); *See Brister v. A.W.I., Inc.*, 946 F.2d 350, 355 (5th Cir.1991). Thus, the plaintiff must establish that he is a seaman, a crew member, with respect to the barge on which his injury occurred while in tow, and that the defendant was the owner of the vessel.

### A. *Seaman Status*

To be a seaman, an employee must be a "master or member of a crew of any vessel." *Roberts v. Cardinal Services, Inc.*, 266 F.3d 368, 374 (5th Cir.2001). Seaman status also requires some contribution by the injured person to the function of the vessel (it is not in dispute that a barge is "vessel.") or the accomplishment of its mission. *Id.* One's connection to the vessel must be substantial in terms of both duration and nature. *Chandris v. Latsis*, 515 U.S. 347, 371, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995). The Fifth Circuit has also added that a seaman's connection to a vessel must be more than transitory. *Becker v. Tidewater, Inc.*, 335 F.3d 376, 388 (5th Cir.2003).

There is no question that Coakley is a seaman with regard to the S/R CHICAGO, the tug to which he was permanently assigned. The barge being towed by the S/R CHICAGO, however, was unmanned. There was simply no crew for Coakley to be a member of. In *Smith v. Harbor Towing & Fleeting, Inc.*, 910 F.2d 312 (5th Cir.1990), the Fifth Circuit inquired whether the crew member of one vessel could make an unseaworthiness claim for injuries that occurred on a barge that was being towed. The plaintiff was injured when tying two barges and a rig together for towing. *Id.* at 312–13. The court rejected the notion that the plaintiff was a seaman as to the tow, because his work on the tow was transitory in nature.[2] *Id.* at 313. His status as a seaman on the tug was of no consequence to his status as to the towed barges. *See id.; Reddick v. Daybrook Fisheries, Inc.*, 1997 WL 218252 (E.D.La.1997) (Vance, J.). Under *Smith*, the plaintiff was required to establish that he was a seaman with regard to the vessel on which he sustained his injury. The plaintiff's work on the barge while in service of the tug does not meet that standard as a matter of law.

---

1. The Seventh and Eleventh Circuits have defined an appurtenance is "any identifiable item that is destined for use aboard a specifically identifiable vessel and is essential to the vessel's navigation, operation, or mission." *Scott v. Trump Indiana*, 337 F.3d 939, 944 (7th Cir.2003) (ruling on a claim under the LHWCA). A barge in tow would not fit within this common sense definition.

2. The *Smith* Court also noted that the plaintiff had a panoply of remedies available to him under the Jones Act, such as "maintenance and cure and a Jones Act negligence claim against his employer as employer, an unseaworthiness claim against his employer as vessel owner for any injury on the [vessel to which he was assigned] and a negligence claim in maritime tort" for breaches of duty by non-employers. *Id.* at 315. These remedies are also available to Coakley. In *Smith*, an unseaworthiness claim was asserted against a third-party owner of the barge under tow on which the accident happened. That fact differs slightly from Coakley's facts, but, doctrinally, *Smith* nevertheless guides this Court's decision.

## B. *The Fleet Doctrine*

█ The assignment of Coakley to one vessel also plays an important role in denying the application of the fleet doctrine, if the plaintiff were to claim that he was assigned to a group of vessels. In *Reddick,* the district court agreed with the proposition that "a seaman *permanently assigned to one vessel* cannot pursue an unseaworthiness claim for injures sustained aboard a second vessel with which the plaintiff only had a transitory relationship on the theory that he performed a substantial part of his work aboard a fleet of vessels." 1997 WL 218252 at *2 (emphasis added). Coakley was assigned to the S/R CHICAGO without consideration of the specific vessels towed.

A group or fleet of vessels is an identifiable group of vessels either acting together or under one control. *St. Romain v. Ind'l Fabrication,* 203 F.3d 376, 378 (5th Cir.2000). No common goal exists between the S/R CHICAGO and the barges it towed. The S/R CHICAGO's goal in relation to its tow was simply to transport the barges.

Additionally, the so-called group of vessels must be identifiable, meaning a finite group of ships. *See Cardinal Services, Inc.,* 266 F.3d at 375. That aspect of the fleet doctrine is not based on a per voyage standard because this interpretation would be counterintuitive to the rule. When the owner is not an owner of a finite group of vessels, the Fifth Circuit has " 'reject[ed] the notion that fleet of vessels in this context means any group of vessel an employee happens to work aboard.' " *Coats v. Penrod Drilling Corp.,* 5 F.3d 877, 890 (5th Cir.1993). The Fifth Circuit has also rejected the "operational control test" to define a group of vessels because such a view was too expansive. *See Id.* at 379–80. The operational control doctrine is generally applicable only to owned and chartered vessels. *See Buras v. Comm'l Test-*

*ing & Eng'g,* 736 F.2d 307, 311 (5th Cir. 1984). SeaRiver's towing agreement with Kirby contemplates an ever-changing number of possibilities in determining a group of vessels. The agreement includes towing for all Kirby needs, as well as its affiliates and subsidiaries. It not only includes vessels owned by these companies, it also includes vessels time or demised-chartered or owned by third parties to be towed by SeaRiver. This hardly equates with some finitely identifiable group of vessels. Coakley cannot be a seaman as to all barges that may be towed by the S/R CHICAGO.

## C. *Ownership of the Icy Barge*

█ Professor Schoenbaum, in his Admiralty and Maritime Law treatise, states that,"[t]he appropriate defendant in an unseaworthiness case is the person who had operational control of the ship at the time the condition was created or the accident occurred." Thomas J. Schoenbaum, 1 Admir. & Mar. Law § 6–25 (4th ed.). This proposition was invoked by the Court in originally denying the defendant's motion for summary judgment. The proposition in the Schoenbaum treatise, however, overstates the rule in the Fifth Circuit. As a general rule, the vessel owner is the proper defendant for an unseaworthiness claim. *Chandris v. Latsis,* 515 U.S. 347, 371, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995). In *Martin v. Walk, Haydel & Associates, Inc.,* 742 F.2d 246 (5th Cir. 1984), the Fifth Circuit denied relief to a seaman against a vessel user because the defendant did not control the vessel under a demise charter, also known as a bareboat charter. *Id.* at 248–49. Demise charterers are considered owners *pro hac vice* and stand in the shoes of the owner for the warranties of seaworthiness. *Forrester v. Ocean Marine Indem. Co.,* 11 F.3d 1213, 1215 (5th Cir.1993). This is an important doctrinal element that drives the distinc-

tion in Coakley's case. The Fifth Circuit has ruled that the burden is on "the party seeking to establish a demise charter 'is heavy, for courts are reluctant to find a demise when the dealings · between the parties are consistent with any other relationship.'" *Martin,* 742 F.2d at 248–49 (citing *Guzman v. Pichirilo,* 369 U.S. 698, 82 S.Ct. 1095, 8 L.Ed.2d 205 (1962)).

 There is no charter party[3], whether written or oral, between SeaRiver and Kirby. The only relationship between these companies is the towing agreement. Unlike *Forrester, Martin,* and other cases contemplating the application of the owner *pro hac vice* doctrine, Kirby's barge was unmanned. SeaRiver did not own, use, or man the barge where Coakley was hurt. The fact that SeaRiver did not man or use any of the vessels towed under the towing agreement obstructs conversion of the towing agreement to a demise charter. Such towing arrangements do not remotely encompass ownership or operation of the other vessel. *See e.g. Farnsworth v. Basin Marine, Inc.,* 1998 WL 259972 (E.D.La.1998) (denying a seaworthiness claim because the towing vessel owner was not the owner or operator of the unmanned towed vessel). The Court's review of the towing agreement turns up no provision that reasonably suggest the elements of a demise charter.

Accordingly, the Court's August 8th decision was in error and the Court now enters partial judgment as a matter of law in favor of SeaRiver, dismissing plaintiff's claim of unseaworthiness. The Court or-

der denying summary judgment dated August 8, 2003 is hereby rescinded.[4]

---

3. Black's law dictionary defines a charter as "[t]he *leasing* or *hiring* of an airplane, ship, or other vessel." Black's Law Dictionary 228 (7th ed.1999) (emphasis). The service being provided, under the facts of this case, was for the benefit of Kirby and, therefore, cannot by

any stretch be considered leased or hired by SeaRiver.

4. Trial on the merits on the Jones Act negligence claim was held before a jury on May 24–25, 2004.